UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN A. LAWYER, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. |
| | § | CLASS ACTION |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| ZALE CORPORATION, NEAL L. GOLDBERG, RODNEY CARTER, MARY E. BURTON and CYNTHIA T. GORDON, | § § § § | |
| | § | |
| Defendants. | § | |
| | § | DEMAND FOR JURY TRIAL |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

**INTRODUCTION**

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Zale Corporation ("Zale" or the "Company") between November 16, 2006 and October 29, 2009, inclusive (the "Class Period"), against Zale and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.      Zale is a specialty retailer of diamonds and other jewelry products.  Zale is headquartered in Irving, Texas.

3.      During the Class Period, defendants issued materially false and misleading statements regarding the Company's turnaround plans, financial results and compliance with Generally Accepted Accounting Principles ("GAAP").  Specifically, the Company failed to properly account for its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes.  As a result of defendants' false and misleading

statements, Zale stock traded at artificially inflated prices during the Class Period, reaching a high of $31.42 per share on December 5, 2006.

4.    Then, on October 29, 2009, Zale issued its fourth quarter and full fiscal year-end 2009[1] financial results, reporting a net loss for the year ending July 31, 2009 of $189.5 million. Additionally, Zale provided restated financial information for fiscal year 2005 through the third quarter 2009 in the Company's Annual Report on Form 10-K that was filed on October 29, 2009. As a result of the restatement, Zale dramatically reduced its reported earnings for the period by 23% from $138.3 million on an aggregate basis to $112.7 million. Zale further reported a material weakness in its internal controls. Moreover, Zale announced that the SEC had initiated an investigation related to Zale's restatement.

5.    On this news, Zale's stock collapsed $1.66 per share to close at $4.73 per share on October 30, 2009, a one-day decline of nearly 26%, on volume of more than 2.7 million shares.

6.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)    The Company had failed to properly account for its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes;

(b)    The Company had failed to maintain effective internal controls;

(c)    The Company's turnaround plan, including its major initiatives to reengage its core customer and to enhance operational efficiency, was not working; and

---

[1]    Zale's fiscal year ends July 31.

(d)    Given the turmoil in the economy and the Company's inability to effectuate its turnaround plan, the Company had no reasonable basis to make projections about its fiscal year 2009 financial results.

7.    As a result of defendants' false statements and omissions, Zale's stock traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 84% from their Class Period high.

## JURISDICTION AND VENUE

8.    Jurisdiction is conferred by §27 of the 1934 Act, 15 U.S.C. §78aa.  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

9.    Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false and misleading statements were made in or issued from this District.

10.    Zale's principal executive offices are located at 901 West Walnut Hill Lane, Irving, Texas.

## PARTIES

11.    Plaintiff Brian A. Lawyer purchased Zale publicly traded securities as described in the attached certification and was damaged thereby.

12.    Defendant Zale operates as a specialty retailer of fine jewelry.  The Company operates through three segments: Fine Jewelry, Kiosk Jewelry, and All Other.  Zale was founded in 1989.  Defendant Zale may be served at 901 West Walnut Hill Lane, Irving, Texas 75038.

13.    Defendant Neal L. Goldberg ("Goldberg") has served as a director and Chief Executive Officer ("CEO") of Zale since December 20, 2007.  Goldberg served as President of the

Company from December 20, 2007 to August 5, 2008. Defendant Goldberg may be served at 2408 Victory Park Lane, Apt. 835, Dallas, Texas 75219.

14.    Defendant Rodney Carter ("Carter") was, at relevant times, Chief Financial Officer ("CFO") of Zale until his resignation from the Company on January 20, 2009. Additionally, Carter served as the Company's Chief Administrative Officer and Executive Vice President from September 2007 until January 20 2009. Defendant Carter may be served at 18334 Nicklaus Way, Eden Prairie, Minnesota 55347.

15.    Defendant Mary E. Burton ("Burton") was, at relevant times, a director, President and CEO of Zale until her resignation from the Company on December 19, 2007. Defendant Burton may be served at 1011 Mountain Springs, Palm Desert, California 92260.

16.    Defendant Cynthia T. Gordon ("Gordon") was, at relevant times, Senior Vice President and Controller of Zale until her resignation from the Company on June 30, 2009. Additionally, Gordon served as Interim CFO from January through June 2009. Defendant Gordon may be served at 276 Pine Street, Southlake, Texas 76092.

17.    Defendants Goldberg, Carter, Burton and Gordon (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Zale's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that

the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

18. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Zale. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Zale's publicly traded securities was a success, as it: (i) deceived the investing public regarding Zale's prospects and business; (ii) artificially inflated the price of Zale's publicly traded securities; and (iii) caused plaintiff and other members of the Class to purchase Zale's publicly traded securities at inflated prices.

## BACKGROUND

19. Zale, founded in 1989, operates as a specialty retailer of fine jewelry. The Company operates through three segments: Fine Jewelry, Kiosk Jewelry, and All Other. The Fine Jewelry segment operates under five brands. Its Zales Jewelers brand provides diamond jewelry primarily in the bridal and fashion segments through 693 stores in 50 states and Puerto Rico; Gordon's Jewelers brand provides jewelry in 202 stores in 31 states of the United States and Puerto Rico; the Peoples Jewellers and Mappins Jewellers brands offer gold jewelry, gemstone jewelry, and watches through 212 stores in Canada; and Zales Outlet brand offers branded watches, gemstones, gold merchandise, and diamond fashion and solitaire products through 140 stores in 36 states and Puerto Rico. The Fine Jewelry segment also sells its products through e-commerce sites, such as zales.com and gordonsjewelers.com. The Kiosk Jewelry segment provides gold and silver products, such as bracelets, earrings, charms, rings, 14 karat and 10 karat gold chains, and silver and diamond jewelry primarily under Piercing Pagoda, Plumb Gold, and Silver and Gold Connection brand names, through 684 mall-based kiosks. The All Other segment provides insurance and reinsurance facilities

for various types of insurance coverage, such as merchandise replacement coverage, credit insurance coverage, and discontinued lines of insurance.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Zale publicly traded securities during the Class Period (the "Class"). Excluded from the Class are defendants.

21.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Zale has over 31 million shares of stock outstanding, owned by hundreds if not thousands of persons.

22.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or deliberately disregarded that their statements were false and misleading;

(e)     whether the prices of Zale publicly traded securities were artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

23. Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

24. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

25. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

26. On November 16, 2006, Zale reported is first quarter fiscal year 2007 financial results in a release which stated in part:

> ***Zale Corporation, North America's largest specialty retailer of fine jewelry, today announced a net loss, of $26.4 million, or $0.55 per share, for the Company's first quarter ended October 31, 2006***. The Company's earnings guidance excluded the impact of derivative accounting on gold and silver contracts under SFAS 133 which resulted in an after-tax $5.4 million loss, or $0.11 per share. This loss would have been $0.01 per share under hedge accounting treatment within SFAS 133. Excluding the net impact of derivative versus hedge accounting treatment, the Company reported a net loss of $21.6 million, or $0.45 per share. For the same period last year, the Company reported a net loss of $23.7 million, or $0.47 per share. Excluding the non-cash impairment charge of $5.3 million, or $0.10 per share from the closure of Bailey Banks & Biddle locations in last year's first quarter, the Company reported a net loss of $18.4 million, or $0.36 per share.
>
> *        *        *
>
> "Earnings performance met expectations for the quarter and comparable store sales were consistent with plan as we moved through clearance and increased transactions were offset by a lower average ticket," commented Betsy Burton, President and Chief Executive Officer.
>
> Ms. Burton continued, "***We executed our plan for the quarter which included resetting all Zales stores with new and expanded assortments, clearing as much non-program merchandise as possible and making investments in payroll and inventory to prepare for a successful Holiday***."

The Company reiterates its second quarter guidance of comparable store sales growth of 3% to 4% and diluted earnings per share of $2.17 to $2.22, excluding the net impact of derivative versus hedge accounting treatment.

27.    Throughout November 2006, Zale's stock continued to increase, reaching a high of $31.42 per share on December 5, 2006.

28.    On December 8, 2006, Zale filed a Form 10-Q with the SEC setting forth the financial results described above. The Form 10-Q was accompanied by certifications signed by defendants Burton and Carter, which stated:

I, [Burton/Carter], certify that:

1.    I have reviewed this Quarterly Report on Form 10-Q of Zale Corporation;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)), and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for the registrant and have:

a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and

the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation;

d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

e)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

f)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29.     On February 21, 2007, Zale reported its second quarter fiscal year 2007 financial results in a release which stated in part:

Zale Corporation, a leading specialty retailer of fine jewelry in North America, today announced adjusted net earnings of $94.8 million or $1.94 per diluted share for the Company's second quarter ended January 31, 2007, after adjustments for derivative accounting under SFAS 133 and a change in methodology in revenue recognition for lifetime jewelry protection plans sold during the quarter. Including these adjustments, *the Company reported net earnings under U.S. GAAP of $88.1 million or $1.80 per diluted share*.

\*       \*       \*

Year-to-date total revenues, excluding the store closures, increased 2.9% to $1.437 billion, compared to $1.397 billion for the same period last year. Including the store closures, year-to-date total revenues increased 1.1% compared to $1.421 billion for the same period last year. Year-to-date comparable store sales, which exclude the store closures, increased 1.1%. *Year-to-date net earnings totaled $61.7 million or $1.26 per diluted share*. . . .

"While not reaching our original expectations for the quarter, I'm pleased with the progress we've made," commented Betsy Burton, Chief Executive Officer. "At the Zales brand, we had our first comparable store increase in three years and our first increase in operating earnings in four years. *Customers reacted favorably to our expanded assortment in our core diamond fashion and bridal categories as well as our marketing repositioning." Ms. Burton continued, "While we gave back margins due to aggressive pricing and increased promotional activity at Holiday, in January we changed our focus to maximizing gross profit dollars. In the second half, we will continue maximizing gross profit dollars as well as focus on expense reduction, particularly those investments in payroll and marketing that did not generate sufficient sales gains to justify. We are focused on driving shareholder value over the long-term and believe the Company is being positioned to achieve that goal*."

Current earnings guidance incorporates current sales and margin trends as well as ongoing payroll investments in the business. The Company projects a third quarter comparable store sales decrease of 2% to 3% and earnings per diluted share in the range of $0.00 to $0.04 and for the fiscal fourth quarter comparable store sales of flat to slightly positive and earnings per diluted share in the range of ($0.05) to ($0.01). The Company expects full year fiscal 2007 diluted earnings per share in the range of $1.46 to $1.52. The Company's guidance excludes the impact of derivative accounting and the change to its jewelry protection plan offering and related revenue recognition. The impact of derivative accounting is not quantifiable because it is market dependent and the expected impact from a change to its jewelry protection plan is approximately ($0.15) in the third quarter and ($0.14) in the fourth quarter.

30.    On March 9, 2007, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants Burton and Carter substantially identical to the certifications quoted above in ¶28.

31.    On May 22, 2007, Zale reported its third quarter fiscal year 2007 financial results, in a release which stated in part:

*Zale Corporation, a leading specialty retailer of fine jewelry in North America, today announced a net loss of $3.1 million or $0.06 per share for the Company's third quarter ended April 30, 2007*.

\*     \*     \*

Year-to-date revenues were flat at $1.95 billion, compared to the same period last year. Excluding revenues of $24.3 million related to Bailey Banks & Biddle store closures in the second quarter of last year, year-to-date revenues increased 1.3%. Year-to-date comparable store sales decreased 0.1%. ***Year-to-date earnings totaled $58.6 million or $1.20 per diluted share*** . . . .

"***While comp store sales decreased 3.4%, a focus on maximizing gross margin dollars and good expense control contributed to earnings in-line with expectations for the quarter***," commented Betsy Burton, Chief Executive Officer.

Ms. Burton continued, "We believe retail in general is showing signs of weakness, and higher gas prices have directly impacted the discretionary income of the moderate customer. Given these overall macro trends, we are lowering our sales projections and, while cautious, we are maintaining our current earnings guidance for fourth quarter."

The Company projects a fourth quarter comparable store sales decrease of 2% to 3% and GAAP earnings per share in the range of ($0.11) to ($0.15). The guidance includes an estimated ($0.12) impact due to the decline in revenue recognized from the change to its jewelry protection plan offering and approximately $0.02 for the net impact of derivative versus hedge accounting. Excluding these items, the Company continues to expect earnings per share in the range of ($0.01) to ($0.05) per share.

32.     On June 11, 2007, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.  The Form 10-Q was accompanied by certifications signed by defendants Burton and Carter substantially identical to the certifications quoted above in ¶28.

33.     On August 30, 2007, Zale reported its fourth quarter and fiscal year 2007 financial results in a release which stated in part:

***Zale Corporation, a leading specialty retailer of fine jewelry in North America, today reported net earnings of $1.5 million, or $0.03 per diluted share for the Company's fourth quarter ended July 31, 2007***.

\*     \*     \*

"***Improving sales trends post Mother's Day combined with a focus on maximizing gross margin dollars and good expense control resulted in earnings at the high end of expectations***," commented Betsy Burton, Chief Executive Officer.

Ms. Burton continued, "***Fiscal 2007 was a year in which we focused on going back to the basics. We tested investments in inventory assortments as well as***

*in payroll and marketing. While many of these initiatives paid off, others have been pared back. We will take these learnings as well as the opportunity to refine our pricing and promotional strategy for this Holiday to drive meaningful earnings improvement in our all-important second quarter of fiscal 2008. Additionally, we believe some of the organizational changes that we made will give us the ability to positively impact the business going forward.* For fiscal 2008, we expect earnings improvement, a significant reduction in inventory and the continued success of our lifetime jewelry protection plans to generate approximately $125 million to $150 million in free cash flow."

Ms. Burton concluded, "*For the past year, we have looked at many aspects of our business, from our portfolio strategy and brand positioning to opportunities to improve the core business. We believe we have a significant opportunity to drive shareholder value both near-term and long-term. This strategy consists of improving productivity of our core mall business, a growth strategy centered on our brands that produce the highest returns on capital, and the migration to a more centralized, streamlined organization*."

Fiscal 2007 Results

*Net earnings for fiscal year 2007 were $59.3 million or $1.21 per share.*

\*      \*      \*

Fiscal 2008 Guidance

The Company also provided its annual forecast for its fiscal year ending July 31, 2008. For the full year, the Company expects a comparable store sales increase, including its online sales, of 1% to 2%. GAAP earnings are expected to be in the range of $1.11 to $1.16 per share. Excluding the $6.7 million or $0.14 per share impact from the adoption of APB 23, fiscal 2007 earnings would have been $1.07 per share. These earnings do not reflect the longer term earnings impact of the lifetime warranties. Including the impact of the increase in the unrecognized revenues on the balance sheet, earnings would be expected in the range of $2.11 - $2.16 in fiscal 2008 compared to $1.85 in fiscal 2007. This reflects earnings growth in the mid-teens, consistent with our long-term targets. Over time, the lifetime warranties will accelerate our GAAP earnings while the change in unamortized revenues on the balance sheet declines.

34.    On October 1, 2007, Zales filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph.  The Form 10-K was accompanied by certifications signed by defendants Burton and Carter substantially identical to the certifications quoted above in ¶28.

35.     On November 20, 2007, Zale reported its first quarter fiscal year 2008 financial results in a release which stated in part:

> **Zale Corporation, a leading specialty retailer of fine jewelry in North America, today reported a net loss of $28.4 million, or $0.58 per share, for the Company's first quarter ended October 31, 2007**.
>
> \*         \*         \*
>
> "**Earnings performance met expectations for the quarter as we offset slightly lower sales with gross margin rate improvement across all brands after adjusting for the warranty change**," commented Betsy Burton, President and Chief Executive Officer. "**We continue to execute our strategy of maximizing gross margin dollars and maintaining good expense control in the current challenging macro environment**."

Guidance

The Company updated its second quarter guidance to reflect the sale of Bailey Banks & Biddle, anticipated share repurchases and sales trend. It now expects comparable store sales of flat to slightly negative. Earnings from continuing operations are expected to be in the range of $1.60 to $1.65 per diluted share. There was an approximate $0.27 reduction in earnings expectations due to the sale of Bailey Banks & Biddle with the remainder of the adjustment being the benefit of any share repurchases offset by the Company's cautious outlook for the Holiday season.

For the full year ending July 31, 2008, the Company now expects earnings per diluted share from continuing operations of $0.86 to $0.91 after adjusting for the Bailey Banks & Biddle sale and the cautious outlook for Holiday. The Company continues to expect the increase in unrecognized revenues on the balance sheet to be approximately $80 - 90 million for the fiscal year which represents approximately $1.00 in future earnings per share before the benefit of any share repurchases.

Return of Cash to Stockholders

Zale today announced that it plans to enter into a $100 million accelerated share repurchase ("ASR") agreement with JPMorgan as part of Zale's previously announced $200 million stock repurchase program.

Zale plans to enter into the ASR agreement for the repurchase of approximately 5 million shares. Under the proposed terms of the agreement, JPMorgan will deliver approximately 4.3 million shares to Zale on November 21, 2007. Upon completion of the ASR, the final price of shares repurchased will be determined based on a volume weighted average price for the Zale common shares over a period of up to 4.5 months, minus a set discount. Zale may elect to settle the purchase adjustment in shares or in cash.

In addition to the ASR agreement, Zale plans to enter into a Rule 10b5-1 plan under which Zale may repurchase approximately 1.2 million shares of its common stock during a period of approximately 3 months. Zale plans to complete its $200 million share repurchase with open market repurchases.

Rodney Carter, Executive Vice President, Chief Administrative Officer and Chief Financial Officer commented, "We believe the current stock repurchase strategy optimizes shareholder value. The ASR, combined with a Rule 10b5-1 plan and open market repurchases, allow us to achieve a meaningful reduction in outstanding shares immediately, and to then opportunistically complete the remaining authorization later this fiscal year."

36.     On December 10, 2007, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.   The Form 10-Q was accompanied by certifications signed by defendants Burton and Carter substantially identical to the certifications quoted above in ¶28.

37.     On December 19, 2007, defendant Burton resigned from the Company.

38.     On February 21, 2008, Zale reported its second quarter fiscal year 2008 financial results in a release with stated in part:

> *Zale Corporation, a leading specialty retailer of fine jewelry in North America, today announced earnings from continuing operations for the second quarter of fiscal 2008 of $52.7 million, or $1.16 per diluted share*, compared to $77.1 million, or $1.57 per diluted share for the second quarter of fiscal 2007. The second quarter ended January 31, 2007 included a $2.5 million, or $0.05 per diluted share, positive impact related to derivative accounting treatment for the Company's gold and silver contracts.
>
> "*While these second quarter results are disappointing, I am convinced that Zale has a strong basis for improved performance as we again provide our value-oriented customer with an exceptional experience*," said Neal Goldberg, President and Chief Executive Officer.
>
> "*We intend to make Zale into a more nimble and efficient organization*. We remain focused on the generation of free cash flow, achieving a high return on capital and maintaining financial rigor and discipline overall. *Our first step is a reduction of $100 million in excess inventory*. We have conducted a detailed review by category and item and believe this product can be sold at a profit. Through fiscal 2008 we expect a negative impact on gross margin of approximately 500 basis points which is expected to be more than offset by the positive impact on free cash flow. *Although*

*we plan to make some selective investments, this $100 million reduction is not intended to be replenished. These actions are designed to ensure Zale's success and generate value for shareholders over the long-term.*"

Second Quarter of 2008

–       Total revenues for the second quarter ended January 31, 2008 were $828 million compared to $892 million last year, a decrease of 7.2%

–       Comparable store sales for the second quarter decreased 7.3%

–       Unrecognized revenues related to warranty sales increased $33 million or $0.44 per diluted share. This compares to an increase in unrecognized revenue of $30 million or $0.37 per diluted share in the second quarter of last year. Including the impact of unrecognized revenues, adjusted earnings are $1.60 per diluted share this year compared to $1.89 per diluted share excluding a $0.05 gain from derivatives last year.

–       Retired 5.8 million shares during the second quarter.  Anticipate retiring approximately 11 million shares in total once share repurchase program is completed.

First Half of 2008

–       Total revenues for the six months ended January 31, 2008 were $1.205 billion compared to $1.274 billion last year, a decrease of 5.4%

–       Comparable store sales for the six months ended January 31, 2008 decreased 5.1%

–       Unrecognized revenue related to warranty sales increased $47 million or $0.61 per diluted share. This compares to an increase in unrecognized revenue of $29 million or $0.36 per diluted share for the six months ended January 31, 2007.  Including the impact of unrecognized revenues, adjusted earnings are $1.16 per diluted share this year compared to $1.48 per diluted share excluding a $0.04 loss from derivatives last year.

–       ***Earnings from continuing operations for the six months ended January 31, 2008 were $26.0 million, or $0.55 per diluted share***, compared to $52.4 million, or $1.08 per diluted share for the six months ended January 31, 2007. The six months ended January 31, 2007 included a $2.3 million, or $0.04 per diluted share, negative impact related to derivative accounting treatment for the Company's gold and silver contracts.

39.    On March 10, 2008, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.  The Form 10-Q was accompanied by certifications signed by defendants Goldberg and Carter substantially identical to the certifications quoted above in ¶28.

40.    On May 22, 2008, Zale reported its third quarter fiscal year 2008 financial results in a release which stated in part:

> ***Zale Corporation, a leading specialty retailer of fine jewelry in North America, today reported a net loss from continuing operations for the third quarter of fiscal 2008 of $17.4 million, or $0.42 per share***, compared to a loss of $5.0 million, or $0.10 per share for the third quarter of fiscal 2007.
>
> ***In February, Zale launched a program to permanently reduce inventory levels in order to better clarify merchandise presentation, improve inventory efficiency and to help position the Company for the future***. The Company's goal was to achieve a $100 million reduction in inventory at an anticipated 500 basis point negative impact on gross margin in the second half of fiscal 2008. During the third quarter, the clearance strategy exceeded expectations, resulting in the liquidation of $55 million of inventory with a 460 basis point reduction in gross margin. Earnings per share for the quarter was negatively impacted compared to the prior year reflecting the gross margin compression related to the liquidation, the Company's aggressive stock repurchases, and a change to the effective tax rate.
>
> "We are very pleased with our progress this quarter against our plan," said Neal Goldberg, President and Chief Executive Officer. "***We have a focused agenda to improve performance and the team has stayed locked-in on achieving our objectives. This includes focusing on our core customer by clarifying our merchandise offering, improving our value proposition and simplifying our marketing message that is led by product and supported by price. We are enhancing our operational effectiveness through the implementation of our efficiency program and the proper alignment of the organizational structure. Finally, we are maintaining financial rigor and discipline by executing on our inventory liquidation program, generating savings from the $65 plus million in identified expense reductions and returning value to shareholders through a significant stock repurchase program***."
>
> Third Quarter of 2008
>
> –    Revenues for the third quarter ended April 30, 2008 were $477 million compared to $449 million last year, an increase of 6.2%.
>
> –    Comparable store sales for the third quarter increased 5.8%.

- Unrecognized revenues related to warranty sales increased $17 million or $0.25 per diluted share. This compares to an increase in unrecognized revenue of $19 million or $0.23 per diluted share in the third quarter of last year. Including the impact of unrecognized revenues, the adjusted loss is $0.17 per share this year compared to earnings of $0.10 per diluted share last year including a $0.03 negative impact from derivatives.

- Repurchased approximately 8.1 million shares during the third quarter. Shares outstanding were 35.5 million at April 30, 2008.

First Nine Months of 2008

- Revenues for the nine months ended April 30, 2008 were $1.68 billion compared to $1.72 billion last year, a decrease of 2.4%.

- Comparable store sales for the nine months ended April 30, 2008 decreased 2.3%.

- Unrecognized revenue related to warranty sales increased $64 million or $0.86 per diluted share. This compares to an increase in unrecognized revenue of $47 million or $0.59 per diluted share for the nine months ended April 30, 2007. Including the impact of unrecognized revenues, adjusted earnings are $1.05 per diluted share this year compared to $1.57 per diluted share last year including a $0.01 gain from derivatives.

- ***The earnings from continuing operations for the nine months ended April 30, 2008 were $8.6 million, or $0.19 per diluted share***, compared to earnings of $47.4 million, or $0.97 per diluted share for the nine months ended April 30, 2007.

- Approximately 13.8 million shares repurchased fiscal YTD at an average price of $18.06. This represents approximately $250 million of the $300 million stock repurchase authorization - a 28% reduction in actual shares in fiscal 2008. Approximately $50 million remaining in authorization.

41.     On June 6, 2008, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants Goldberg and Carter substantially identical to the certifications quoted above in ¶28.

42.     On August 28, 2008, Zale reported its fourth quarter fiscal year 2008 financial results in a release which stated in part:

> ***Zale Corporation, a leading specialty retailer of fine jewelry in North America, today reported a net loss from continuing operations for the fourth quarter of fiscal 2008 of $4.9 million, or $0.15 per share***, compared to net earnings from

continuing operations of $0.7 million, or $0.01 per diluted share, for the fourth quarter of fiscal 2007.

The loss for the fourth quarter of fiscal 2008 includes a benefit associated with the release of a vacation accrual of $7.7 million, net of taxes, or $0.23 per share, and a gain on the sale of an unproductive asset of $3.5 million, or $0.10 per share. The earnings for the fourth quarter of fiscal 2007 included a benefit of $1.1 million, or $0.02 per share, for the net impact of derivative versus hedge accounting on the Company's gold and silver contracts and a net tax benefit of $6.7 million, or $0.14 per diluted share, primarily related to a decision to indefinitely reinvest certain undistributed foreign earnings in accordance with APB 23.

"*In the fourth quarter, we exceeded our expectations for sales, earnings and inventory reduction,*" said Neal Goldberg, Chief Executive Officer. "*We sustained the strong momentum we achieved in our third quarter as we made improvements to our core assortment and executed our clearance strategy, driving our second straight quarterly comp store increase of approximately 6%. This demonstrates our ability to continue to drive traffic and capture market share in a tough environment*."

Mr. Goldberg concluded, "*After a challenging start to fiscal 2008, which included a disappointing Holiday season, we executed a focused agenda with clear objectives. To improve performance over the current fiscal year and beyond, we are concentrating on improving our customer focus, enhancing operational effectiveness and maintaining financial discipline. Specific actions we are taking to achieve these objectives include differentiating our product offering by simplifying and focusing our assortment; streamlining the organization to eliminate redundancies; realizing $65 plus million in ongoing annualized savings; and permanently reducing $100 million in inventory. We believe, given the progress made against our initiatives, that we are well-positioned as we enter the new fiscal year*."

\*       \*       \*

Fourth Quarter of 2008

- Revenues for the fourth quarter ended July 31, 2008 were $456 million compared to $430 million last year, an increase of 6.1%.

- Comparable store sales for the fourth quarter increased 6.1%.

- Repurchased approximately 3.9 million shares during the fourth quarter. Shares outstanding were approximately 32 million at July 31, 2008.

Full Year 2008

- Revenues for the twelve months ended July 31, 2008 were $2.14 billion compared to $2.15 billion last year, a decrease of 0.7%.

- Comparable store sales for the twelve months ended July 31, 2008 decreased 0.7%.

- ***Earnings from continuing operations for the twelve months ended July 31, 2008 were $3.7 million or $0.09 per diluted share***, compared to earnings of $48.1 million, or $0.98 per diluted share for the twelve months ended July 31, 2007.

- Approximately 17.6 million shares were repurchased in fiscal 2008 at an average price of $18.59. This represents approximately $327 million of the $350 million stock repurchase authorization – a 36% reduction in actual shares in fiscal 2008.

Guidance

As a result of the change in the Company's warranty programs in fiscal 2007, management considers non-GAAP total revenues and non-GAAP EPS, both adjusted for total warranty sales, as important metrics in evaluating the Company's current performance. As such, for the full year ended July 31, 2009, the Company expects the following:

- ***Diluted EPS in the range of $1.10 to $1.25; Diluted EPS adjusted for total warranty sales in the range of $2.35 to $2.50***.

- Revenue includes:

  - comparable store sales in the range of negative 1% to flat;

  - a store count which is planned to be slightly down, consistent with reduced capital spending in fiscal 2009.

- Revenue adjusted for total warranty sales includes approximately $65 million in additional deferred revenue.

- Free Cash Flow in the range of $145 million to $155 million.

- The Company expects approximately $120 million in total warranty sales. Total revenue recognized from warranty sales is expected to be $55 million for fiscal 2009, which includes $15 million from 2009 sales plus $40 million from sales made in 2007 and 2008.

43. On September 26, 2008, Zale filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph. The Form 10-K was accompanied by certifications signed by defendants Goldberg and Carter substantially identical to the certifications quoted above in ¶28.

44.    On November 25, 2008, Zale reported its first quarter fiscal year 2009 financial results in a release which stated in part:

> **Zale Corporation today reported a net loss from continuing operations of $45.3 million, or $1.43 per share for the first quarter ended October 31, 2008**, compared to a net loss from continuing operations of $26.7 million, or $0.54 per share, for the prior year period. Revenues were $364 million, compared to $377 million in the prior period, a decrease of 3.5%. During the quarter comparable store sales decreased 3.7% compared to the prior year.
>
> Of the year-over-year decline in the net loss per share from continuing operations, $0.44 was due to a 35% lower share count in the fiscal 2009 quarter and $0.18 resulted from a decrease in the estimated annual effective tax rate. During the quarter ended October 31, 2008 the Company had a weighted average number of common shares outstanding of 31.8 million fully diluted, compared to 49.1 million in the prior year period.
>
> Total warranty sales were $21 million, excluding a $4 million decline in the value of the Canadian dollar from period to period. Warranty sales including the Canadian dollar decline were $17 million compared to $24 million in the prior period. Adjusted for total warranty sales, the net loss from continuing operations was $42.0 million, or $1.33 per share, compared to a net loss from continuing operations of $17.9 million, or $0.36 per share for the comparable quarter in fiscal 2008.
>
> During the first quarter of fiscal 2009, the Company liquidated $47 million in excess inventory, bringing total inventory liquidations since inception of the strategy in February to $174 million. At October 31, 2008, merchandise inventories were down $21 million compared to the prior year period.
>
> "Though the national economic environment is challenging, we have continued to deliver strong performance on both store operations and cost control. We have recently eliminated almost $15 million of additional capital expenditures from our fiscal 2009 plan, and we intend to find more avenues for reducing both capital and expenses in the coming year. Our work to consolidate and speed up our supply chain should enable us to run with significantly lower inventory, driving greatly improved turns," said Neal Goldberg, Zale Chief Executive Officer. "We have worked hard to improve the selection of merchandise and the overall experience our customers will have during this Holiday season. We believe that Zale's position as the value provider in the industry will serve us well in these economic conditions," added Goldberg.
>
> **In view of the uncertainties surrounding the national economy and consumer spending in these extraordinary times, the Company does not believe it can reliably gauge likely Holiday performance or sales in the balance of fiscal 2009 with any precision. As a result of this uncertainty, the Company does not believe that its previously issued earnings guidance should be relied upon. The**

*Company has experienced a significant decline in sales during October and November. However, if these current sales trends continue, the Company remains confident that it will still generate free cash flow of not less than $50 million for fiscal year 2009.*

45.     On this news, Zale's stock declined $3.73 per share on high volume to close at $5.38 per share – a one-day decline of 41%.  Nonetheless, Zale's stock continued to trade at artificial levels due to defendants' assurances and continued misrepresentations.

46.     On December 8, 2008, Zale filed a Form 10-Q with the SEC setting forth the financial results described above.  The Form 10-Q was accompanied by certifications signed by defendants Goldberg and Carter substantially identical to the certifications quoted above in ¶28.

47.     On January 20, 2009, defendant Carter resigned from the Company.  Defendant Gordon, who was Senior Vice President and Controller of Zale, assumed the role of Interim CFO.

48.     On February 25, 2009, Zale reported its second quarter fiscal year 2009 financial results, in a release which stated in part:

*Zale Corporation, a leading specialty retailer of fine jewelry in North America, today announced a net loss from continuing operations of $23.6 million, or $0.74 per share*, for the second quarter ended January 31, 2009, that includes approximately, on an after-tax basis, (1) charges related to store impairments of $5.0 million, or $0.16 per share, (2) charges related to goodwill impairments of $5.0 million, or $0.16 per share, and (3) an $18.6 million charge, or $0.58 per share, related to a valuation reserve on foreign tax credits resulting from our decision to revoke our election under Accounting Principles Board No. 23, "Accounting for Income Taxes – Special Areas." Excluding these charges, earnings for the second quarter were $5.1 million, or $0.16 per share. Earnings from continuing operations for the prior year period was $52.7 million, or $1.16 per share.

Revenues for the second quarter of fiscal 2009 were $679 million, compared to $828 million in the prior period, a decrease of 17.9%. During the quarter comparable store sales decreased 18.1% compared to the prior year.

Total warranty sales for the quarter were $36 million, compared to $43 million in the prior year. Adjusted for total warranty sales and other special items, the net earnings from continuing operations was $19.1 million, or $0.60 per share, compared to net earnings from continuing operations of $72.6 million, or $1.60 per share for the comparable quarter in fiscal 2008.

Neal Goldberg, Chief Executive Officer, commented, "Our operating results were negatively impacted by the extremely weak macro-economic environment. Additionally, in response to the continued deterioration in the business, we aggressively promoted store-wide discounts during our holiday sales season. We believe these discounts decreased gross margin by approximately 500 basis points."

Mr. Goldberg continued, "We have identified key factors to improve our results. Immediately following Christmas, we returned to a strategy that emphasized emotion with a promotional posture that is item-specific. The result has been more normalized 50% plus merchandise margins, along with comparable store sales improvement since the trends at Holiday. These comparable store sales and margin improvements have held from January through the Valentine's Day selling period. Furthermore, we have identified additional inventory and expenses to drive out of the business. The plan will phase in savings intended to rationalize the size and scale of the organization to sales trends."

**Cost Reduction Details**

The first phase of the Company's cost reduction plan, which began in February of 2008, identified $175 million in inventory and cost reductions. In the next phase announced today, the Company has identified $140 million in additional inventory and cost reductions. The Company expects to realize savings consisting of:

- Approximately $34 million in SG&A through fiscal 2010 from the closure of approximately 115 underperforming stores at lease maturity;

- $21 million in savings from staff reductions throughout the organization. The staff reductions occurred in February 2009 and included 245 associate positions, of which approximately 75 were open positions;

- $10 million through store-level and in-store efficiencies, bringing the estimated total cost savings to $65 million; and

- An additional $75 million in inventory reductions from increased productivity through fiscal 2010.

The Company stated it will continue its focus on financial rigor and liquidity during the current economic environment. With inventory productivity as a priority, merchandise inventories at January 31, 2009 were approximately $100 million lower than the prior year. In February 2009, Canadian and Puerto Rican assets were added to the Company's $500 million asset-backed credit facility to increase collateral under the facility. The Company will look aggressively for further opportunities to operate the business more effectively while maintaining the financial disciplines to drive value for shareholders over the long-term.

49.     On March 11, 2009, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants Goldberg and Gordon substantially identical to the certifications quoted above in ¶28.

50.     On May 27, 2009, Zale reported its third quarter fiscal year 2009 financial results in a release which stated in part:

> **Zale Corporation, a leading specialty retailer of fine jewelry in North America, today announced a net loss from continuing operations of $23.2 million, or $0.73 per share**, compared to a loss of $17.4 million, or $0.42 per share, for the third quarter ended April 30, 2009 and 2008, respectively. As compared with the prior year, earnings per share were negatively impacted by $0.17 related to the 10 million reduced outstanding share count.
>
> Revenues for the third quarter of fiscal 2009 were $379 million as compared to $477 million for the prior period, a decrease of 20.5%. During the quarter comparable store sales decreased 20.0% as compared to an increase of 5.8% for the 2008 period. The prior year's results were positively impacted by a clearance initiative that permanently reduced inventory by $100 million. The Company achieved a gross margin on sales during the third quarter of fiscal 2009 of 50.1%, compared to 47.5% the prior year. Overall results were impacted positively by a reduction of aggregate selling, general and administrative expense by $22 million compared to the prior year, primarily resulting from the impact of cost reductions previously implemented by the Company. The Company is currently in the process of implementing additional reductions in operating costs including realigning its rent structure with sales trends, closing underperforming stores, renewing leases that offer the best returns and negotiating an efficient exit from its Bailey, Banks and Biddle contingent liability.
>
> As of April 30, 2009, the Company had outstanding debt of $333 million, a reduction of $57 million from the second quarter of fiscal 2009.
>
> "Our key goals coming into the quarter were to strengthen and stabilize the foundation of the business while recapturing the gross margin we lost from our promotional stance during Holiday," commented Neal Goldberg, Chief Executive Officer. "We accomplished these goals as we generated positive free cash flow for the period with debt levels being reduced approximately $57 million from the second quarter and gross margins returning to above 50%."
>
> Mr. Goldberg concluded, "While we have taken important steps to creating a more efficient business model, we are up against difficult same store sales comparisons due to the clearance initiative through September 2009."

51.    On June 9, 2009, Zale filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.  The Form 10-Q was accompanied by certifications signed by defendants Goldberg and Gordon substantially identical to the certifications quoted above in ¶28.

52.    On June 30, 2009, defendant Gordon resigned from the Company.

53.    On September 2, 2009, Zale issued a press release entitled "Zale Reschedules Fourth Quarter Conference Call," which stated in part:

> Zale Corporation today announced that it has rescheduled the release date for its fiscal 2009 financial results to Wednesday, September 9, 2009 at 9:00 a.m. ET. During the finalization of the Company's year-end closing, certain non-cash adjustments were identified impacting prior period results aggregating approximately $13.0 million pre-tax, of which approximately $6.3 million relates to years prior to fiscal 2000.  The Company is in the process of finalizing the appropriate accounting treatment for those adjustments.

54.    On September 8, 2009, Zale issued a press release entitled "Zale Postpones Fourth Quarter Results," which stated in part:

> Zale Corporation today announced that it is postponing its earnings release and investor conference call previously scheduled for Wednesday, September 9 at 9:00 a.m. ET in order to finalize a review of accounting for prepaid advertising costs that surfaced during the Company's year-end closing process. Once complete, the Company will announce the date of its earnings call and provide additional details.

55.    On September 18, 2009, Zale filed a Form 8-K with the SEC, which stated in part:

**Item 4.02    Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

> On September 17, 2009, management of Zale Corporation (the "Company") and the Audit Committee of the Company's Board of Directors, in consultation with the Company's independent registered public accounting firm, Ernst & Young LLP, concluded that the Company's previously issued financial statements for fiscal years 2008 and 2007, and interim periods therein and subsequent, included in the Company's filings with the Securities and Exchange Commission contain the errors specified below and should no longer be relied upon.  Therefore, the Company plans to restate its financial statements for fiscal 2008 and interim periods in fiscal 2008 and 2009, and will present the restated financial statements in its Annual Report on Form 10-K ("10-K") for the fiscal year ended July 31, 2009.  The Company currently

expects to file its 10-K on or before October 29, 2009, although this date may change if unforeseen circumstances arise.  The restatement pertains to the following issues:

- A significant portion of prepaid advertising costs should have been recorded as expense.  Prepaid advertising reflected in our balance sheets as of July 31, 2008 and 2007 totaled approximately $23 million and $18 million, respectively.

- Certain adjustments aggregating approximately $9 million on a pre-tax basis, including (1) a charge related to an intercompany accounts receivable associated with our wholly owned insurance subsidiaries, (2) a charge related to certain depository bank account reconciliations and (3) a benefit related to personal property tax reserves.  In addition, a charge totaling approximately $4 million will be recorded in fiscal 2008 related to federal income taxes resulting from the expiration of net operating loss carryforwards.

The adjustments required for fiscal 2008 and 2007 and subsequent quarterly periods have not been finalized, and the restatement is not complete as of the date of this filing.  Additional information may become available which could cause the Company's current estimates to change, and such changes, if any, could be material.

56.     Then, on October 29, 2009, Zale reported its fourth quarter and full fiscal year 2009

financial results in a release which stated in part:

Zale Corporation today reported its financial results for the fourth quarter and full year ended July 31, 2009. The Company incurred a net loss for the year ended July 31, 2009 of $189.5 million, or $5.94 per share, compared to a net loss from continuing operations of $6.5 million, or $0.15 per share, in fiscal 2008. For fiscal year 2009, revenues were $1.78 billion compared to $2.14 billion for fiscal 2008, a decrease of 16.8%. Comparable store sales declined 16.6% for fiscal 2009 compared with a decline of 0.7% in the prior year. Gross margin for fiscal 2009 was 46.7% compared to 49.0% in the prior year.

For the fiscal year 2009, the Company incurred special charges totaling $92.6 million after tax, or $2.90 per share. These charges included, net of tax: (1) $16.5 million for store closures; (2) $9.1 million for store impairments; (3) $14.1 million for lease contingencies associated with Bailey Banks & Biddle; (4) $8.3 million for inventory impairment; (5) $5.0 million goodwill impairment; and (6) $39.6 million for tax adjustments. Of the total adjustments, $70.8 million, or $2.22 per share, were recorded in the fiscal fourth quarter ended July 31, 2009. Net loss for fiscal 2009, adjusted for special charges, was $96.9 million, or $3.04 per share, compared to a net loss from continuing operations, adjusted for special gains, of $16.5 million, or $0.39 per share in the prior year.

For the fourth quarter ended July 31, 2009, the Company reported a net loss of $89.8 million, or $2.81 per share, compared to a loss of $10.0 million, or $0.30 per

share in the prior year period. The Company recorded special charges, net of tax, of $70.8 million, or $2.22 per share during the fourth quarter, compared to special gains, net of tax, of $11.0 million, or $0.33 per share during the fourth quarter of fiscal 2008. Revenues in the fourth quarter were $357.1 million, a decline of 21.7% compared to $456.2 million in the 2008 fourth quarter. Comparable store sales for the fourth quarter declined 21.2% compared with an increase of 6.1% during the prior year period, which was favorably impacted by clearance initiatives. Gross margin was 46.4% in the fourth quarter of 2009 compared with 47.3% in the prior year period. Gross margin in the fiscal fourth quarter was 50.2% prior to an inventory impairment charge recorded during the quarter.

For the year ended July 31, 2009, selling, general and administrative expenses declined $57.8 million, or 5.9%, to $927.2 million compared to $985.0 million in 2008. For the fourth quarter of 2009, selling, general and administrative expenses declined $20.0 million, or 8.9%, to $205.1 million compared to $225.1 million for the prior period. At July 31, 2009, long term debt was $310.5 million, a net reduction of $15.8 million, compared to $326.3 million at July 31, 2008.

"Our financial results for fiscal 2009 reflected the most difficult year in retailing in memory. Nonetheless, we believe we have positioned the business for much improved performance," commented Neal Goldberg, Chief Executive Officer. "We have streamlined our cost structure and closed over 200 underperforming locations. We have reduced and realigned inventories and increased our proprietary products and collections. We have emphasized discipline in pricing and promotional strategies, and training for our fine jewelry consultants. We are encouraged that fiscal 2010 to date reflects improved business performance, with sales reflecting the exit of various specialty jewelry competitors, as well as a strengthening economy and our own internal efforts."

"Despite the weak overall environment, during the fourth quarter we generated $29 million of free cash flow and reduced debt by $22 million," commented Matt Appel, Chief Financial Officer. "The rationalization of our store base, reductions in occupancy expense and aggregate square footage and other ongoing expense reductions should all contribute to our efforts in fiscal 2010 to returning the business to profitability and generating cash flow to further reduce debt."

**Fiscal 2010 Outlook**

Comparable store sales have decreased approximately 8% to date for the first quarter of fiscal 2010. In addition, unlike fiscal 2009, the Company does not expect to recognize any U.S. tax benefits during fiscal 2010 to offset tax expense expected with respect to earnings from our Canadian operations.

**Restated Financial Results**

As disclosed in the Company's Form 8-K filing on September 18, 2009, during the finalization of its fiscal 2009 financial statements, the Company concluded that previously issued financial statements for fiscal years 2008 and 2009 would be restated to reflect certain accounting adjustments for advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes. Restated financial information for fiscal 2008 and 2009 is detailed in the Company's Annual Report on Form 10-K that was filed on October 29, 2009.

57.     On October 29, 2009, Zale filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph. The Form 10-K was accompanied by certifications signed by defendant Goldberg and Matthew W. Appel, the Company's new CFO, substantially identical to the certifications quoted above in ¶28. The Form 10-K further disclosed:

Subsequent to the Company's disclosure in its Form 8-K filed on September 18, 2009 that it would restate certain financial statements, the Staff of the Fort Worth, Texas office of the Securities and Exchange Commission notified the Company that it had begun an investigation and requested certain information relating to the matters disclosed in the Company's Form 8-K. The Company is cooperating with the Staff's investigation. The Company cannot predict the outcome or duration of the SEC investigation, but at this time, the Company does not believe that the investigation will have a material effect on the Company's financial condition or results of operations.

58.     On this news, Zale's stock collapsed $1.66 per share to close at $4.73 per share on October 30, 2009, a one-day decline of nearly 26%, on volume of more than 2.7 million shares, or nearly five times the average three-month daily volume.

59.     The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

(a)     The Company had failed to properly account for its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes;

(b)     The Company had failed to maintain effective internal controls;

(c)    The Company's turnaround plan, including its major initiatives to reengage its core customer and to enhance operational efficiency, was not working; and

(d)    Given the turmoil in the economy and the Company's inability to effectuate its turnaround plan, the Company had no reasonable basis to make projections about its fiscal year 2009 financial results.

60.    As a result of defendants' false statements, Zale publicly traded securities traded at inflated levels during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 84% from their Class Period high before these disclosures.

## ZALE'S FALSE FINANCIAL
## REPORTING DURING THE CLASS PERIOD

61.    In order to inflate the price of Zale's securities, defendants caused the Company to falsely report its results for fiscal years 2005 through 2008 and for the first, second and third quarters of fiscal year 2009 by improperly accounting for its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property taxes, which overstated the Company's reported net income.  The Company has restated its financial statements due to its improper accounting for various items.

62.    Zale's Class Period financial results were included in a Form 10-K and Form 10-Qs filed with the SEC.  The results were also included in press releases disseminated to the public. Defendants' SEC filings claimed that the financial information presented therein was a fair statement of Zale's financial results and that the results were prepared in accordance with GAAP.[2]

---

[2]    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practices at a particular time.  SEC

63.    Defendants' representations were false and misleading as to the financial information reported, as such financial information was not prepared in conformity with GAAP, nor was the financial information a "fair representation" of Zale's financial condition and operations, causing the financial results to be presented in violation of GAAP and SEC rules.

64.    During the Class Period, defendants caused Zale to improperly account for various expense and tax related items in violation of GAAP. Then, on September 18, 2009, Zale announced that it would be restating its financial results due to improper accounting related to prepaid advertising costs and certain other items. Ultimately, on October 29, 2009, Zale filed restated financial results for fiscal years 2008 and 2009, which included restated information for fiscal years 2005 through 2007. Zale further announced that the SEC had begun an investigation into Zale's accounting due to its restatement. For fiscal year 2005 through the third quarter of 2009, Zale overstated its income by 23%, reporting $112.7 million in net earnings instead of $138.3 million. The restatement had a dramatic impact on Zale's fiscal year 2008 results, slashing its net earnings from a reported $10.8 million to $631,000.

**Zale's Restatement Is an Admission of Falsity**

65.    As a result of Zale's improper accounting practices with respect to its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property tax reserves, it has restated its financial statements for the quarterly and annual

---

Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure. Regulation S-X requires that interim financial statements, such as quarterly financial statements, must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

periods for fiscal years 2005 through 2008 and for the first three quarters of fiscal year 2009. The fact that Zale restated its financial statements is an admission that:

(a)    the financial results originally issued prior to and during the Class Period and its public statements regarding those results were materially false and misleading;

(b)    the financial statements reported prior to and during the Class Period were incorrect based on information available to defendants at the time the results were originally reported; and

(c)    the financial statements can no longer be relied upon as being accurate.

66.    The SEC has reiterated its position regarding restatements:

[T]he Commission often seeks to enter into evidence restated financial statements, and the documentation behind those restatements, in its securities fraud enforcement actions in order, *inter alia, to prove the falsity and materiality of the original financial statements [and] to demonstrate that persons responsible for the original misstatements acted with scienter* . . . .

*In re Sunbeam Sec. Litig.*, No. 98-8258-Civ.-Middlebrooks, Brief of the United States Securities and Exchange Commission as *Amicus Curiae* Regarding Defendants' Motions *In Limine* to Exclude Evidence of the Restatement and Restatement Report at 1 (S.D. Fla. Feb. 22, 2002).

67.    The fact that Zale restated its financial statements is an admission that the financial statements originally issued were false and that the overstatement of its income was material. Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement announced by Zale was to correct for material errors in its previously issued financial statements. *See* APB No. 20, ¶¶7-13. Moreover, SFAS No. 154, *Accounting Changes and Error Corrections*, states: "Any error in the financial statements of a prior period discovered subsequent to their issuance shall be reported as a prior-period adjustment by restating the prior-period financial statements." SFAS No. 154, ¶25. Thus, GAAP provides that financial statements should be restated

in order to correct an error in previously issued financial statements. Zale's restatements are due to errors with respect to its advertising costs, intercompany accounts receivable, depository bank accounts, federal income taxes and personal property tax reserves, it has restated its financial statements for the quarterly and annual periods for fiscal years 2005 through 2008 and for the first three quarters of fiscal year 2009  Thus, the restatements are admissions by Zale that its previously issued financial results and its public statements regarding those results were false.

## LOSS CAUSATION/ECONOMIC LOSS

68.     By misrepresenting Zale's financial position, the defendants presented a misleading picture of the Company's business and prospects.  Thus, instead of truthfully disclosing during the Class Period that Zale's business was not as healthy as represented, defendants falsely concealed their improper accounting.

69.     Defendants' claims of profitability caused and maintained the artificial inflation in Zale's stock price throughout the Class Period and until the truth about its past and future earnings was gradually revealed to the market.

70.     Defendants' false and misleading statements had the intended effect and caused Zale stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $31.42 per share in December 2006.

71.     As a result of defendants' false statements, Zale stock traded at inflated levels during the Class Period.  However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 84% from their Class Period high before these disclosures.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

72.    Plaintiff incorporates ¶¶1-71 by reference.

73.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

74.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Zale publicly traded securities during the Class Period.

75.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Zale publicly traded securities.  Plaintiff and the Class would not have purchased Zale publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

76.    Plaintiff incorporates ¶¶1-75 by reference.

77.    The Individual Defendants acted as controlling persons of Zale within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of Zale stock, the Individual Defendants had the power and authority to cause Zale to engage in the wrongful conduct complained of herein.  Zale controlled the Individual Defendants and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

### PRAYER FOR RELIEF

FOR THESE REASONS, plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B.    Awarding plaintiff and the members of the Class damages, including interest;

C.    Awarding plaintiff reasonable costs and attorneys' fees; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 19, 2009.    Respectfully Submitted,

_____
JOE KENDALL
State Bar No. 11260700
HAMILTON LINDLEY
State Bar No. 24044838
KENDALL LAW GROUP, LLP
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

**ATTORNEYS FOR PLAINTIFF**